**WILKES ASSOCIATES,
et al., Plaintiffs,**

v.

**HOLLANDER INDUSTRIES
CORPORATION, et al.,
Defendants.**

No. C–3–99–088.

United States District Court,
S.D. Ohio,
Western Division.

March 30, 2001.

---

Michael P. Moloney, Dayton, OH, Timothy W. Boyd, Atlanta, GA, for plaintiffs.

Robert P. Bartlett, Jr., Dayton, OH, Dina M. Cary, for defendants.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 31); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. # 33); CONFERENCE CALL SET.

RICE, Chief Judge.

The Plaintiffs, Wilkes Associates ("Wilkes") and Weaver Associates ("Weav-

er"), are manufacturers' representatives which formerly acted in that capacity for Defendant Hollander Industries, Corp. ("HCI"). Plaintiffs bring suit against HCI and its two former shareholders, Larry Hollander and Joseph Hollander, seeking to recover unpaid commissions and pre-judgment interest on those commissions.

The circumstances giving rise to this litigation are not in dispute. The parties agree that Wilkes and Weaver entered into contracts with HCI, under which they agreed to perform as manufacturers' representatives in exchange for the payment of commissions. They also agree that, in October, 1996, HCI entered into an agreement with MasterCasters, Inc. ("MCI"), whereby the latter purchased the assets of the former. As part of that agreement, MCI assumed some of HCI's liabilities, including unpaid commissions in the sum of $122,695.39, which HCI owed to Wilkes, and unpaid commissions in the sum of $73,222.69, which HCI owed to Weaver. Wilkes and Weaver were not informed of the agreement between HCI and MCI, prior to its execution. Defendants did not attempt to secure the consent of Wilkes or Weaver to having MCI assume the debt HCI owed to them. After that transaction, HCI conducted only a very limited number of transactions. In February, 1997, HCI's directors voted to dissolve that corporation. As a result of the dissolution, the money which had been on deposit in HCI's corporate bank account was distributed evenly between Larry and Joseph Hollander, HCI's two equal shareholders.[1]

Less than two weeks after the transaction between HCI and MCI had been con-summated, Plaintiffs met with Robert Karban, the owner of MCI. The Plaintiffs did not, however, demand immediate payment of the sums owed to them by HCI, obligations which MCI had assumed. Rather, in lieu of immediate payment, they accepted promissory notes from MCI, which did not become payable until August 1, 1997, more than eight months later. MCI also agreed to execute promissory notes payable to the Plaintiffs for the commissions which they had earned from MCI, during the months of November and December, 1996, and January, 1997, periods of time following the asset purchase of HCI by MCI, but prior to HCI's vote to dissolve the corporation. In addition, MCI entered into an 10 year agreements with each of the Plaintiffs, which were intended to insure the payment of any commissions earned during that 10 year period.[2]

MCI did not flourish, and on July 17, 1998, Plaintiffs along with three other creditors filed a involuntary bankruptcy petition against that company. From October, 1996, when MCI purchased HCI's assets, until July, 1998, when the bankruptcy petition was filed, the Plaintiffs continued to act as manufacturers' representatives for MCI. The Plaintiffs have filed proofs of claims in the bankruptcy proceeding, seeking to recover the amount of the promissory notes which MCI had given them. Not having obtained any payment from MCI's bankruptcy estate, the Plaintiffs initiated this litigation on March 1, 1999.

In their Amended Complaint (Doc. # 11), the Plaintiffs set forth eleven claims for relief, to wit: breach of contract, negligent misrepresentation, fraudulent convey-

---

1. The amount of those distributions is controverted. According to the Plaintiffs, Larry and Joseph Hollander each received approximately $600,000, while the Defendants contend that each received approximately $200,000.

2. There is no evidence or assertion that any of the Defendants was a party to the notes MCI executed in favor of Plaintiffs or the agreements between Plaintiffs and MCI.

ance, breach of fiduciary duty, failure to maintain corporate form (i.e., piercing HCI's corporate veil), joint venture, promissory estoppel, unjust enrichment/quantum meruit, constructive trust, attorney's fees and punitive damages. In their Amended Answer (Doc. # 12), the Defendants have interposed a number of defenses, including the affirmative defenses of waiver and laches.

This case is now before the Court on Defendants' Motion for Summary Judgment (Doc. # 31) and Plaintiffs' Motion for Summary Judgment (Doc. # 33). As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the two such currently pending motions.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")

(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary

judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.

1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

■ With their motion, the Defendants argue that they are entitled to summary judgment on the basis of their affirmative defenses of waiver and estoppel. With their motion, the Plaintiffs contend that they are entitled to summary judgment on their breach of contract claim.[3] The Plaintiffs have not sought summary judgment on the Defendants' affirmative defenses of waiver and laches. As a means of analysis, the Court will initially rule upon the Plaintiffs' Motion for Summary Judgment (Doc. # 33), which addresses the merits of their breach of contract claim, following which it will turn to the Defendants' Motion for Summary Judgment (Doc. # 31).[4]

---

**3.** In their motion, the Plaintiffs have not addressed their other ten claims for relief, i.e., negligent misrepresentation, fraudulent conveyance, breach of fiduciary duty, failure to maintain corporate form (i.e., piercing HCI's corporate veil), joint venture, promissory estoppel, unjust enrichment/quantum meruit, constructive trust, attorney's fees and punitive damages. Given that the Plaintiffs have not requested summary judgment on all their claims or on the Defendants' affirmative de-

fenses, their motion is in actuality one for partial summary judgment.

**4.** Plaintiffs have invoked this Court's diversity jurisdiction; therefore, it must apply Ohio's choice-of-law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In their memoranda, the parties have cited and relied upon the law of Ohio. Although HCI was a corporation organized under the laws of Ohio, which

*I. Plaintiffs' Motion for Summary Judgment (Doc. # 33)*

Therein, the Plaintiffs initially argue that they are entitled to summary judgment on their claim that HCI breached the contracts between the parties by failing to pay all commissions owed under those contracts. In particular, Plaintiffs contend that the evidence establishes, as a matter of law, that contracts were formed with HCI, under which they agreed to act as manufacturers' representatives for HCI, with that company agreeing to pay them commissions for their services. The Plaintiffs further contend that the evidence establishes, as a matter of law, that they met their obligations under the contracts and that HCI breached those contracts by failing to pay all commissions earned by them. According to Plaintiffs, Wilkes is owed the sum of $122,695.39 for unpaid commissions and Weaver is owed the sum of $73,222.69 for such commissions. With the exception of the amount of the unpaid commissions (an issue which the Court discusses below), the Defendants do not contest any of the foregoing. Rather, they concede that such contracts existed, that the Plaintiffs performed their obligations under them and that the Plaintiffs have not been paid all the commissions for the services they performed for HCI. Therefore, the Court sustains the Plaintiffs' Motion for Summary Judgment (Doc. # 33), on the issue of liability, to the extent that, with it, they seek summary judgment on the elements of their breach of contract claim. In other words, the Plaintiffs will not have to prove the elements of a claim of breach of contract, i.e., the existence of a contract, performance of its contractual obligations by the party seeking relief, breach by the other party and damages suffered by the party seeking relief. *See Garofalo v. Chicago Title Ins. Co.,* 104 Ohio App.3d 95, 661 N.E.2d 218 (1995). Whether the Plaintiffs will be required to prove the *amount* of their damages (as opposed to the fact that they suffered damages) is discussed below. Given that the Plaintiffs did not move for summary judgment on Defendants affirmative defenses of waiver and laches, the Court has not addressed them in connection with ruling on Plaintiffs' motion.

 Whenever three parties enter into contractual relationships involving separate agreements, there is the possibility that one of the agreements will constitute a novation, whereby the obligations of one party are extinguished as a result of another party being substituted as the obligor. Plaintiffs argue that there was not a novation of their agreements with HCI, whereby that entity's obligations to pay the debts it owed them was extinguished, with MCI being substituted as the obligor.[5] Under the law of Ohio, novation is an affirmative defense. *See e.g., Sheet Metal Workers National Pension Fund v. Bryden House Limited Partnership,* 130 Ohio App.3d 132, 139, 719 N.E.2d 646, 651 (1998); *Bahner's Auto Parts v. Bahner,* 1998 WL 470494 (Ohio App.1998); *Todd v.*

---

is also the state in which its principal place of business was located, Plaintiffs are alleged to be citizens of Tennessee and Pennsylvania. Consequently, one might argue that, under Ohio's choice-of-law principles, the substantive law of Tennessee or Pennsylvania must be applied in this litigation. Since the parties have not raised that argument and, further, given that they have relied upon the law of Ohio, this Court will apply the law of this state. *See ECHO Inc. v. Whitson Co., Inc.,* 52

F.3d 702, 707 (7th Cir.1995) ("Where neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law").

5. The Defendants have not responded to Plaintiffs' request for summary judgment on the issue of whether there was a novation.

*Berk,* 1992 WL 315510 (Ohio App.1992). Rule 8(c) of the Federal Rules of Civil Procedure requires that a defendant plead all affirmative defenses in its answer. Generally, the failure to set forth an affirmative defense in an answer results in its waiver. *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir.1994). Although the Defendants do not expressly mention novation in their Amended Answer, they allege with their Eighth Defense that MCI expressly agreed to assume and to discharge the accounts payable to the Plaintiffs, which were outstanding at the time of the agreement between HCI and MCI, and that the Plaintiffs received promissory notes from MCI for the amounts HCI owed to them. The Court construes those allegations as raising the affirmative defense of novation. The Court agrees with the Plaintiffs, however, that they are entitled to summary judgment on that affirmative defense.

■ In *Moneywatch Cos. v. Wilbers,* 106 Ohio App.3d 122, 665 N.E.2d 689 (1995), the court reviewed the standards which must be applied to ascertain whether a novation has occurred:

> A novation occurs "where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." *McGlothin v. Huffman* (1994), 94 Ohio App.3d 240, 244, 640 N.E.2d 598, 601. In order to effect a valid novation, all parties to the original contract must clearly and definitely intend the second agreement to be a novation and intend to completely disregard the original contract obligation. *Citizens State Bank v. Richart* (1984), 16 Ohio App.3d 445, 446, 16 OBR 516, 517–518, 476 N.E.2d 383, 385–386; *Sherwin–Williams Co. v. Glenn Paint &*

*Wall Paper Co.* (Ohio App.1927), 6 Ohio Law Abs. 101 (novation is an agreement to release a previous debtor and look only to a subsequent debtor). In addition, to be enforceable a novation requires consideration. *Wilson v. Lynch & Lynch Co., L.P.A.* (1994), 99 Ohio App.3d 760, 651 N.E.2d 1328. A novation can never be presumed. *Citizens State Bank,* 16 Ohio App.3d at 446, 16 OBR at 517–518, 476 N.E.2d at 385–386.

*Id.* at 125, 665 N.E.2d at 691. Herein, the uncontroverted evidence is that neither Plaintiff was informed of the transaction between HCI and MCI, until after it had been entered into by those entities. Consequently, neither Wilkes nor Weaver consented to have MCI substituted for HCI as the party responsible for paying the commissions owed them by HCI. Accordingly, the Court sustains the Plaintiffs' Motion for Summary Judgment (Doc. # 33), to the extent that, with it, they seek summary judgment on Defendants' Eighth Defense, which this Court has construed as raising the affirmative defense of novation.

■ In addition, the Plaintiffs contend that Larry and Joseph Hollander, the two shareholders of HCI, can be held personally liable for the unpaid commissions, to the extent that they received distributions from HCI upon its dissolution.[6] The Court agrees. In *Kesselring Ford, Inc. v. Cann,* 68 Ohio App.2d 131, 427 N.E.2d 785 (1980), the First District Court of Appeals addressed the question of whether a shareholder of a dissolved corporation could be held personally liable for the debts of the corporation. Therein, the plaintiff purchased the assets of Cann Ford, Inc. That agreement provided that the purchase for the assets was subject to a future adjustment to account for any fluctuation be-

---

**6.** It bears emphasis that HCI, rather than its shareholders Larry and Joseph Hollander, entered into the contractual relationships with the Plaintiffs.

tween the amount of inventory on hand on the date the agreement had been signed and the date upon which the assets were actually transferred. Shortly after that transaction had been consummated, Cann Ford, Inc., was voluntarily dissolved and its remaining assets distributed to its shareholders. The plaintiff brought suit against the estate of one of those shareholders under the adjustment clause in the agreement, alleging that the value of the inventory had diminished after the agreement had been signed. The trial court dismissed the case for failure to state a claim upon which relief can be granted. The appellate court reversed, writing:

> It is beyond cavil that the assets of a dissolved corporation are regarded as a trust fund from which claims against the corporation must be satisfied. It is further true that such claims against the corporate assets may be pursued against former shareholders to the extent of the assets actually distributed to them. See, generally, 13 Ohio Jurisprudence 2d 423, 424, Corporations, Section 934. See, also, *Leyman Corp. v. Piggly–Wiggly Corp.* (1951), 90 Ohio App. 506, 103 N.E.2d 399; *Krug v. Roberts* (1923), 1 Ohio Law Abs. 750.

*Id.* at 133, 427 N.E.2d at 787. *Accord, State of Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.,* 1996 WL 343440 (S.D.Ohio 1996); *North Consultants, Inc. v. Jane Stimel–Givens,* 1985 WL 10281 (Ohio App.1985); *City Loan Business Service Co. v. Miner–Oyer Supply, Inc.,* 1985 WL 7257 (Ohio App.1985).

■ Nevertheless, Larry and Joseph Hollander argue that personal liability cannot be imposed upon them. In support of that contention, those Defendants cite Ohio Revised Code § 1701.88(D), which addresses the authority of the directors of a dissolved corporation to wind up its affairs. In particular, § 1701.88(D) authorizes directors of such a corporation to distribute the remainder of its assets among the shareholders, "after paying or adequately providing for the payment of all known obligations of the corporation." According to Larry and Joseph Hollander, they adequately provided for the payment of HCI's obligations by entering into the agreement with MCI, under which the latter assumed those liabilities. Even if this Court were to assume that the agreement adequately provided for the payment of HCI's obligations, it could not conclude that this fact would relieve Larry and Joseph Hollander of liability, *as shareholders of HCI.* Section 1701.88(D) addresses the authority of a dissolved corporation's *directors* to distribute its assets to shareholders. That statute does not address the liability of a shareholder, who has received a distribution of a dissolved corporation's assets. Thus, the language of that statute does not impact upon the rule set forth in *Kesselring,* that a shareholder of a dissolved corporation holds its assets in trust for the corporation's creditors and that, therefore, he is liable to the creditors of a dissolved corporation to the extent of the distribution of corporate assets received by him.

Accordingly, the Court sustains the Plaintiffs' Motion for Summary Judgment (Doc. # 33), to the extent that, with it, they argue that personal liability may be imposed upon Larry and Joseph Hollander, for HCI's breach of contract, to the extent that they received distributions of that corporation's assets.

■ Finally, there is the question of the Plaintiffs' damages. It is not controverted that the Plaintiffs have suffered damages, in that they have not been paid all of the commissions they were owed. It is agreed that when HCI sold its assets to MCI, the former owed $122,695.39 to Wilkes and $73,222.69 to Weaver. It is also undisput-

ed that MCI made certain payments to Wilkes and Weaver after that transaction. Defendants argue that they are entitled to set-off those payments against the amount of unpaid commissions owed to the Plaintiffs. If those payments were to compensate the Plaintiffs for the unpaid commissions (i.e., the commissions owed by HCI at the time it sold its assets to MCI), the Defendants are unquestionably entitled to such a set-off. If, on the other hand, the payments to the Plaintiffs were for the purpose of compensating them for services they had performed for MCI after it had purchased HCI's assets, there is no legal basis for holding that Defendants are entitled to a set-off. Daryl Wilkes and Richard Weaver have submitted affidavits in which they state that all payments they received from MCI were compensation for commissions they had earned, *after* MCI had purchased HCI's assets. The Defendants have not submitted contrary evidence. Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether the Defendants are entitled to a set-off for some or all of the payments Plaintiffs received from MCI. They are not.

However, there is another component to the Plaintiffs' request for damages, to wit: their contention that, in accordance with *Kesselring, supra,* personal liability can be imposed upon Larry and Joseph Hollander for the breach of contract committed by HCI. As previously discussed, liability can be imposed upon those individuals only to the extent that HCI's assets were distributed to them upon its dissolution. Construing the evidence in the manner most favorable to the Defendants, as the parties against whom Plaintiffs' motion is directed, Larry and Joseph Hollander each received approximately $200,000 in assets from HCI. Although each of those Defendants was given assets in excess of the total unpaid commissions the Plaintiffs seek to collect, Plaintiffs have also asserted that they are entitled to recover prejudgment interest. Since the total amount of principal and prejudgment interest Plaintiffs may ultimately recover in this action is not known, the Court cannot enter summary judgment in favor of Plaintiffs, indicating that they are entitled to recover the unpaid commissions and prejudgment interest from the individual Defendants.

In sum, the Court sustains in part and overrules in part the Plaintiffs' Motion for Summary Judgment (Doc. # 33). That motion is sustained as it relates to liability, i.e., the elements of Plaintiffs' breach of contract claim, the fact that there was no novation, the potential liability of Larry and Joseph Hollander under *Kesselring, supra,* and the inability of the Defendants to obtain a set-off for the amount that MCI paid to the Plaintiffs. That motion is overruled as it relates to the Plaintiffs' assertion that they may recover principal and prejudgment interest from Larry and Joseph Hollander. The extent of the Plaintiffs' recovery from those individuals is limited by the distributions they received from HCI.

## II. Defendants' Motion for Summary Judgment (Doc. # 31)

With this motion, the Defendants argue that they are entitled to summary judgment on Plaintiffs' breach of contract claim on the basis of their affirmative defenses of waiver and laches. In addition, the Defendants argue that they are entitled to summary judgment on many of the Plaintiffs' other claims. As a means of analysis, the Court will address the two affirmative defenses in the above order, following which it will turn to the Defendants' arguments concerning the Plaintiffs' other claims.

## A. Waiver

According to the Defendants, the Plaintiffs waived their right to recover the unpaid commissions from them, by attempting to obtain such payment from MCI. Under the law of Ohio, waiver is defined as the voluntary relinquishment of a known right.[7] *Chubb v. Ohio Bureau of Workers' Compensation,* 81 Ohio St.3d 275, 278, 690 N.E.2d 1267, 1269 (1998). "As a general rule, the doctrine of waiver is applicable to all personal rights, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided that the waiver does not violate public policy."[8] *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors,* 75 Ohio St.3d 611, 616, 665 N.E.2d 202, 207 (1996) (citation and internal quotation marks omitted). A waiver may be either express or implied from a party's conduct. *Griffith v. Linton,* 130 Ohio App.3d 746, 721 N.E.2d 146 (1998); *Goetz v. First Benefits Agency, Inc.,* 1997 WL 669727 (Ohio App.1997).

As is indicated, the Defendants contend that the Plaintiffs waived their right to recover the unpaid commissions from them by attempting to collect from MCI. As the Defendants point out, the Plaintiffs took promissory notes from MCI, under which the initial payment of the unpaid commissions was not due until August 1, 1997. Indeed, the Plaintiffs pursued MCI, to the extent of joining with others to file an involuntary bankruptcy petition against it. It is apparent from the foregoing that the Defendants are relying upon an implied waiver theory, there being no evidence that either of the Plaintiffs expressly waived its right to attempt to collect the unpaid commissions from the Defendants. In support of their assertion that the Plaintiffs' impliedly waived that right, the Defendants rely upon *State ex rel. Hess v. City of Akron,* 132 Ohio St. 305, 7 N.E.2d 411 (1937). The plaintiff therein was an employee of the defendant. A municipal ordinance guaranteed that plaintiff would be paid a particular salary. In 1931, as a result of increased tax delinquencies, the defendant concluded that it could no longer afford to pay all of its employees the salaries that were mandated by ordinance. Instead of laying off employees, the defendant reduced its employees' salaries. Over the next two years and four months, the plaintiff was paid a reduced salary, twice a month. The plaintiff never protested that he was being underpaid; rather, each time he received payment, the plaintiff signed a payroll sheet which indicated that he had been paid in full. Thereafter, he brought an a mandamus action in the Court of Appeals, seeking to recover the difference between the amount he had been paid and the amount of his salary as set forth in the ordinance. Based upon the foregoing evidence, the Court of Appeals found that the plaintiff had waived his right to be paid the amount set forth in the ordinance. Upon appeal, the Ohio Supreme Court affirmed, concluding that "his conduct was wholly inconsistent with any theory except the plainest and simplest sort of waiver." *Id.* at 307–08, 7 N.E.2d 411.

*Hess* is both factually and procedurally distinguishable from the instant litigation. Herein, there is no evidence that the Plaintiffs signed any type of document analogous to those signed by the plaintiff in *Hess,* indicating that they were looking

---

7. It is undisputed that the Plaintiffs knew of their right to seek recovery of the unpaid commissions from HCI, the party with which they had contracted.

8. There is no basis for concluding that Plaintiffs' waiver of their right to pursue the Defendants for the unpaid commissions would violate the public policy of Ohio.

solely to MCI for payment. Moreover, the Ohio Supreme Court therein affirmed the decision of the Court of Appeals concerning waiver, after a trial on the merits. Herein, the Defendants seek summary judgment on their affirmative defense, arguing that the evidence establishes that defense as a matter of law.

 It bears emphasis that, under the law of Ohio, it is for the jury to determine whether a party's conduct constitutes a waiver of its rights. *See Monteith v. Community Mutual,* 1994 WL 183642 (Ohio App.1994); *Matlack, Inc. v. Allied–Signal, Inc.,* 1992 WL 329399 (Ohio App.1992); *Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210, 1216 (6th Cir.1987). Herein, the jury could find that the Plaintiffs voluntarily relinquished their right to pursue the Defendants for the unpaid commissions, by attempting to collect from MCI through the acceptance of delayed payment notes. The only basis for the Plaintiffs' seeking payment from MCI was MCI's assumption of HCI's liabilities in the agreement between those two corporations. By seeking to enforce rights against MCI, one could argue, the Plaintiffs were acknowledging not only that MCI had assumed HCI's obligations, but also that the latter's obligations were extinguished as a result. On the other hand, the jury could find that the Plaintiffs did not so relinquish their rights against HCI, under the following theory. The Plaintiffs had acted as manufacturers' representatives for HCI and wished to continue to do so for MCI, which had taken over the business of the former. The jury could further conclude that the Plaintiffs, aware that MCI was obligated by its agreement with HCI to pay them the commissions which they were owed, made concessions to MCI, concerning those payments, in order to ensure that it would stay in business (thus being able to collect commis-

sions owed them by Defendants), rather than relinquishing their rights to pursue payment from those Defendants.

Accordingly, the Court overrules the Defendants' Motion for Summary Judgment (Doc. # 31), to the extent that, with it, they argue that they are entitled to summary judgment on Plaintiffs' breach of contract claim on the basis of their affirmative defense of waiver.

### B. Laches

 In *State ex rel. Eaton Corp. v. Industrial Commission,* 80 Ohio St.3d 352, 686 N.E.2d 507 (1997), the Ohio Supreme Court reiterated:

> Laches is "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 35, 15 OBR 134, 135, 472 N.E.2d 328, 329. That prejudice, moreover, must be material prejudice. Id. at 35–36, 15 OBR at 135, 472 N.E.2d at 329.

*Id.* at 356, 686 N.E.2d at 510. *See also, Smith v. Smith,* 168 Ohio St. 447 156 N.E.2d 113 (1959) (holding in ¶ 3 of the syllabus that "[d]elay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim"). Thus, the party asserting that its opponent's claim is barred by laches must prove the following elements, to wit: 1) unreasonable delay or lapse of time in asserting a right; 2) absence of an excuse for the delay; 3) knowledge, actual or constructive, of the injury or wrong; and 4) material prejudice to the party asserting laches. *State ex rel. Mallory v. Public Emp. Retirement Bd.,* 82 Ohio St.3d 235, 244, 694 N.E.2d 1356, 1363 (1998).

■ Herein, this Court need only consider whether the Defendants have suffered material prejudice as a result of the Plaintiffs' delay in asserting their rights. According to the Defendants, the Plaintiffs' delay in demanding payment from HCI caused them to suffer prejudice, because a demand before that corporation had dissolved would have permitted it either to settle the claims or to decline to dissolve. Defendants contend that the dissolution of HCI serves as the only basis for imposing personal liability upon Larry and Joseph Hollander. Therefore, if the Plaintiffs had made a timely demand, Defendants' argument continues, Larry and Joseph Hollander would have been protected from liability by HCI's corporate shield. Accepting all of Defendants' factual premises as correct, the Court cannot conclude that they constitute material prejudice. In accordance with *Kesselring, supra,* liability can be imposed upon Larry and Joseph Hollander, because, as shareholders of HCI, they received disbursements upon the dissolution of that corporation. They may be held liable only to the extent that they received such disbursements. If the Plaintiffs had demanded payment from HCI, Larry and Joseph Hollander would not have been potentially liable for the corporation's debts to the Plaintiffs; however, they would have received less money from HCI when it dissolved, sums reduced by the amount of any payment to Plaintiffs. The delay in making the demand may expose Larry and Joseph Hollander to liability; however, by HCI's not making payments of all commissions owed to Plaintiffs, prior to dissolution, the individual Defendants received additional funds from HCI, with which they can discharge that liability. In other words, the Defendants have presented no evidence (let alone established as a matter of law) that they will be worse off financially, if liability is imposed upon them,

than they would have been, if Plaintiffs had demanded payment before HCI dissolved. The Court's conclusion that the Defendants have not suffered material prejudice is supported by the decision of the Franklin County Court of Appeals in *Bank One Trust Co. N.A. v. LaCour,* 131 Ohio App.3d 48, 721 N.E.2d 491 (1999). Therein, the plaintiff mistakenly disbursed funds to the defendant. It took the plaintiff three years to discover its error and another year to file suit. When the plaintiff sued to recover the mistakenly disbursed funds, the defendant raised the affirmative defense of laches, asserting that plaintiff's four-year delay barred its lawsuit. After a bench trial, the trial court found that laches did not bar the plaintiff's claim, since defendant had not suffered prejudice as a result of the delay. Upon appeal, the Franklin County Court of Appeals affirmed, noting that since the delay affected the defendant only by affording him the use of the mistakenly disbursed funds for a period of four years, he had not suffered material prejudice. Similarly, herein, the failure of Plaintiffs to demand payment before HCI dissolved has merely afforded Larry and Joseph Hollander the use of funds which that corporation would not have been able to distribute if a timely demand had been made.

Accordingly, the Court overrules Defendants' Motion for Summary Judgment (Doc. # 31), as it relates to their affirmative defense of laches.

## C. *Plaintiffs' Other Claims*

The Defendants argue, in the main, that their affirmative defenses of waiver and laches warrant the entry of summary judgment in their favor on Plaintiffs' other claims, i.e., negligent misrepresentation, fraudulent conveyance, breach of fiduciary duty, failure to maintain corporate form (i.e., piercing HCI's corporate veil), joint

venture, promissory estoppel, unjust enrichment/quantum meruit, constructive trust, attorney's fees and punitive damages. In support of that argument the Defendants merely reference their arguments pertaining to waiver and laches as they relate to Plaintiffs' breach of contract claim. Given that the Court has concluded above that those affirmative defenses do not entitle Defendants to summary judgment on the breach of contract claim, the Court similarly concludes that those defenses do not serve as the basis for entering summary judgment in favor of Defendants on Plaintiffs other claims.

 Defendants argue that they are entitled to summary judgment on Plaintiffs' negligent misrepresentation claim, because the Plaintiffs have not suffered any damages as a result of their alleged misrepresentation.[9] The Plaintiffs' have not responded to Defendants' request for summary judgment on the negligent misrepresentation claim. Plaintiffs allege that they asked Larry and Joseph Hollander whether they intended to sell the assets of HCI and were told that no such sale was planned. Doc. # 11 at ¶¶ 29–30. Plaintiffs contend that, had they known about the sale of assets to MCI, they would have insisted that provisions be placed in the agreement by which that sale was consummated, adequately protecting their interests in being paid the commissions which they were owed. *Id.* at ¶ 31. Under the law of Ohio, damages are an essential element of a claim of negligent misrepresentation. *See Textron Financial Corp. v. Nationwide Mut. Ins. Co.,* 115 Ohio App.3d 137, 684 N.E.2d 1261 (1996). When a claim of negligent misrepresenta-tion arises out of a contractual relationship between the parties, those damages must be in addition to those which are attributable to the breach of contract. *Id.* Herein, the Plaintiffs negligent misrepresentation claim arises out of the contractual relationship between the parties. Plaintiffs are seeking to recover the unpaid commissions, the same damages they request with their breach of contract claim. They have not alleged, argued or presented evidence that they suffered a type of damages in addition to or separate and apart from the unpaid commissions. Accordingly, the Court sustains the Defendants' Motion for Summary Judgment (Doc. # 31), as it relates to Plaintiffs' claim of negligent misrepresentation.

 Defendants also seek summary judgment on Plaintiffs' claim with which they request that HCI's corporate veil be pierced. According to Defendants, that claim is redundant, given that the Plaintiffs can recover from Larry and Joseph Hollander pursuant to *Kesselring, supra.* While the piercing the corporate veil claim is an alternative means of imposing personal liability upon Larry and Joseph Hollander, it is not coextensive with Plaintiffs' theory of recovery under *Kesselring.* Under the legal principles set forth therein, the Plaintiffs' recovery is limited to the amount of assets which were distributed to HCI's shareholders. Recovery under a piercing the corporate veil theory would not be so limited. Accordingly, the Court overrules the Defendants' Motion for Summary Judgment (Doc. # 31), as it relates to Plaintiffs' claim of piercing the corporate veil.[10]

9. The Defendants also seek summary judgment on Plaintiffs' fraudulent misrepresentation claim. Given that the Plaintiffs have not plead such a claim, it is not necessary for the Court to address the Defendants' arguments in that regard.

10. The Court notes that the Plaintiffs have not mentioned any of their claims, other than that for breach of contract, in their Motion for Summary Judgment or in their opposition to Defendants' motion. Moreover, many of the Plaintiffs' claims appear to be redundant.

In sum, the Court sustains in part and overrules in part the Defendants' Motion for Summary Judgment (Doc. # 31). That motion is sustained as it relates to Plaintiffs' claim of negligent misrepresentation and is otherwise overruled.

The Court has scheduled a telephone conference call on Tuesday, April 24, 2001, at 8:30 a.m., for the purpose of selecting a trial date and other dates leading to the resolution of this litigation.

Therefore, in order to streamline this litigation for trial, the Court directs Plaintiffs to file, within 20 days from date, a statement indicating which, if any, of their, claims other than that for breach of contract, which they intend to present at trial.